Thank you, Your Honor. Olu Orange on behalf of the Palace, may it please the Court. Your Honor, I'd like to start by quoting the trial court's conclusion as to defendant's actions. Quote, all plaintiffs wanted was their deceased son's personal effects. Defendant knew it, yet instead of simply returning the property, it appears to have initially used the property as a bargaining chip in the party's related excessive force case. That's from the final MSJ ruling in the trial court case. And, Your Honor, what's happened in this case is that L.A. City officials tried to ransom to a young man's parents his personal effects for a dismissal of the wrongful death lawsuit that they brought against the city for killing him in the first place. That, Your Honor, is outrageous. It's also shocking, particularly by government officials, and it's a substantive due process violation, most importantly. The Due Process Clause of the 14th Amendment, substantive due process clause, protects against any government conduct that shocks the conscience. And we would submit certainly that the government conduct in this case shocks the conscience. As such, the trial court, in not considering a substantive due process claim, improperly dismissed plaintiff's case against the city and against defendant Miller. Counsel, are you abandoning your procedural due process claim? No. What our contention is, is that on the facts pled, both types of due process violations exist. And let me explain why. As far as the procedural due process violation, I understand that it's defendant's contention that Peratt and West Covina are applicable in this case, but they're not. Peratt and West Covina are only applicable to the extent government officials' acts were random and unauthorized. Here the government officials' acts were not random. They occurred over the course of two years in a systematic implementation along a computerized schedule. But, counsel, the problem that I see that you have with your case is that there were post deprivation remedies available. So what's your response to the fact that it seems that the availability of post deprivation state remedies precludes your 1983 claim based on procedural due process? Well, assuming that we get to the issue of post deprivation remedies, we would say that they were not available. And the reason is, is because of the discretionary immunities afforded to government officials under California law. Any action by the plaintiffs in this case to try to recover, one, the clothing and the personal effects, and, two, damages for the deprivation, particularly damages for the deprivation, would not be addressed by any of the state law remedies proposed by defendants unless they were the state law tort remedies. And California government's code section 820.2, I believe it is, affords discretionary immunity to government officials, regardless of whether they acted intentionally, accidentally or whatever, so long as they were performing an official duty. An official function over which they had discretion. And in this case, that's what Mr. Miller and Mr. Call on behalf of the city did. As far as whether or not you reach the post deprivation remedies, you only get there if the acts are random and unauthorized. In this case, the acts were conspiratorial. And the Ninth Circuit has said that by definition, as a matter of law, conspiratorial acts between government officials cannot be random. In such case, we don't get to the issue of a post deprivation remedy, because the acts by the government officials were not random. The next issue that comes up is the issue of unauthorized deprivation of property. And I'm going to talk a little bit about that. Qualified immunity. And we will submit that there is no qualified immunity due to defendants in this case, Mr. Miller, because it's very clear that you cannot exercise a continued seizure of property after the legal basis for the seizure evaporates. That's pretty well-established law. That's what happened in this case. The legal basis for the seizure evaporated and disappeared after the internal affairs investigation concluded, yet the property was held for approximately or actually for several months thereafter, while all along the plaintiffs through counsel were requesting the return of their property. Counsel, Judge Gould, if I could interject a question, please. Certainly, Your Honor. So what is the legal test for whether they could hold the property after the investigation ended without a further pre-deprivation, pre-hold theory or hearing? Is it Matthews v. Eldridge or is it something else? We would say that the legal test is set forth best in FDIC v. Malin, which is 486 U.S. 230 at 242. And it sets out basically a three-pronged test. And what you look at is the importance of the interest, the government justification for the continued holding, and the likelihood that an interim decision made to hold was mistaken. And if you look at cases like Haygood v. Younger, which essentially say that when the basis for holding the property or the deprivation evaporates, the question is how soon was an official told that the property should be returned, really what Haygood v. Younger and cases in that regard are doing is applying the same rationale behind the three-pronged test that's set forth by FDIC v. Malin, which happens to be based on or cites Logan v. Emerson. Brush. Counsel, may I ask you, was the substantive due process claim raised in district court? It was not captioned as such. And so while we argued that the conduct was outrageous, that the clothes and the personal property was held without legal basis, all those things, and while the district court judge did find that the clothes were used as a bargaining chip to try to dismiss a lot of the plaintiffs, which speaks to the district court's appreciation of the fact that the conduct was outrageous, we just didn't caption it as a substantive due process claim. And our contention is that we don't have to, so long as we set forth the facts that lead to that conclusion. And in this case, the district court came to that conclusion, but we were not given leave to amend it. So precisely what is your cause of action against Defendant Miller? A cause of action against Defendant Miller as a state actor is a substantive due process violation. All right. Do you want to save some time for rebuttal? Please. Thank you so much. All right. You're welcome. We'll hear from the city officials. I hereby please the court. Melinda Cantrell on behalf of Defendant Apelli, Deputy City Attorney Craig Miller. With regard to the 10 minutes allotted to the defense, I would like to use seven minutes of that time and save three minutes for my co-counsel, Ms. Bach, to argue on behalf of the City of Los Angeles and Charlie Bach. I would just like to start off by saying it's my understanding now the plaintiff is dropping any 14th Amendment due process. Claim against Mr. Miller. If that's the case, I'll start with the substantive due process claim. Would you start by explaining exactly what Mr. Miller's role was in the decision to maintain the property, the deceased property from the parents? The plaintiff's allegations against Deputy City Attorney Mr. Miller is that during the course of confidential settlement negotiations, he allegedly offered to help obtain the property as consideration in exchange for dismissal of the force suit. Is that true? Well, based, I'm just going by the allegations in the record. Accepting the allegations as true. Why wouldn't that be outrageous to hold hostage the possessions of a deceased son from the parents in order to force them to drop the lawsuit? Why wouldn't that be outrageous conduct? Your Honor, first of all, Deputy City Attorney is under no, he's not in charge of returning the property to the plaintiff. The United States Supreme Court in Perkins held that where there is a claim against Mr. Miller, there is a claim against Mr. Miller. If there are adequate post-deprivation remedies, it is up to the plaintiff to be aware of those remedies and pursue those remedies. But if he wasn't, if that wasn't his responsibility, then why would he use the possessions as a bargaining tool to settle the case? Well, the point that I was, he, it is the plaintiff's duty to pursue post-deprivation remedies. If he's going to help them by allowing them not to have to file the tort claims and proper motions, that, to me, in no way is a constitutional violation. I would like to start off by saying... But you left out part of it. If he was going to help them avoid the process, that would be one thing. But if he says if you drop this lawsuit, then I'll help you get the clothes back, that's a little different proposition. Well, to me, respectfully, Your Honor, that in no way amounts to an egregious, shocking-in-the-constance conduct. Why not? Because it's not a constitutional violation to see if he can assist in obtaining return of property so the plaintiff doesn't have to go through the proper channels. He in no way ever interfered with the plaintiff's pursuit of their proper state law remedies, which the Supreme Court says is up to the plaintiff to do. It's up to the plaintiff to know how to pursue based on public cases, statutes, and case law. And if I may, Your Honor, the plaintiffs originally had a substantive due process claim in the initial pleadings, which they intentionally dropped. They then proceeded solely on a procedural due process claim, never argued to the district court that they're now pursuing a substantive due process claim, never asked for a leave to amend in conjunction with the court rulings for any type of substantive due process claim. I submit that that claim is waived, and also that would be futile because the conduct in this case isn't the brutal, offensive, shocking-in-the-conscious conduct alleged in this case. And if I was going to... And also, Judge Gould, if I could ask you a couple of questions. And I'm going to apologize, Judge Rawlinson, if I'm taking this past the planned time. It's an important case we can give someone an extra minute or two. But my question is this. Clearly they have a right to take the clothes when they have an investigation. Yes, sir. But a separate decision is made each time, like a hold is put on the clothes after the investigation is done. So why did they put a hold on the clothes after the investigation was done? I think the exact reason why is not 100 percent clear by the record, but the investigation was ongoing. But the main issue in this case is that... Wait a minute. I said after the investigation was done. So that's my hypothetical, which I know occurred at some point here. And if there isn't a reason for why they put the hold on, that would seem by different inference to support the plaintiff's theory that maybe they put the hold on to get leverage in the excessive force case. I just want to know what your client's position is to why they held the property when the investigation was done. I believe the record would show that the reasoning, they claimed attorney and client privilege. So it's not 100 percent clear from the record, but it's my understanding that in April of 2010, the property was offered back and it was finally returned in November of 2010. But if I could just stress to you, the main issue in this case is that where the parties conceived the initial deprivation was pursuant, there was not an ability to have an initial pre-deprivation hearing. The only issue then is whether there's adequate state remedies under post-deprivations under state law. There is no authority whatsoever for any... They can use a state law remedy. I don't think they have a right to a pre-deprivation hearing on the initial taking of the clothes. But my question is when the investigation is over, is done and finished, and someone makes a volitional official act, we're going to keep the clothes? That's a separate government act, and at least in theory you have the question, did they have to have a hearing before making those separate whole decisions? Yes, Your Honor, under the Perkins Trilogy, the answer is no. Once there has been a pre-deprivation hearing, which was lawfully seized, under the Perkins lines of cases, the only remedy then is state law remedies. And if those are adequate, there is no constitutional deprivation, no due process violation under the 14th Amendment. The only case that plaintiff is relying on is Haygood, and that is a liberty, deprivation of liberty case. And Perkins was decided after Haygood, which specifically held... Haygood is different because the guy is kept in prison when he should be released. It's personal liberty, not the clothes. But the clothes of a deceased are not unimportant to the parents. Would I be correct if I thought that we should apply the precedent of Matthews v. Eldridge from the Supreme Court to a decision to keep the clothes when the investigation is over? Respectfully, Your Honor, I didn't mean to jump in. Respectfully, Your Honor, that would be incorrect because it's not a constitutional deprivation. Perhaps the plaintiff could have pursued a state tort, but under the law, it's not a constitutional deprivation, and there's absolutely no cases holding that there needs to be continued hearings for continued deprivation of property. So the law is certainly not clearly established in that regard. So Deputy City Attorney Mr. Miller would be entitled to qualified immunity. But to the contrary, Perkins clearly establishes that if the initial deprivation was, you know, proper without a hearing, the only time the allegations would arise to a constitutional deprivation for a violation of the Due Process Clause of the 14th Amendment is if the state tort claims were inadequate. Here, the Ninth Circuit has repeatedly found that the California state law tort remedies are completely adequate. There's ability to sue. I took you over your time, so I apologize to the panel. You don't have to continue from my feet. No apology necessary, but I did want to ask you a question about substantive due process. What's your response to opposing counsel's observation that the words were used, it wasn't necessarily captioned, and it's not a constitutional deprivation? It's not as substantive due process, but the judge recognized it and addressed it as such. What's your response? My response, again, would be twofold. Number one, they intentionally dropped the substantive due process claim. So I think it's waived, clearly. And number two, again, the allegations in this case I feel certainly do not arise to a substantive due process level violation. And that's not the kind of conduct when the plaintiff has adequate state tort remedies and the defendant isn't interfering with his pursuit of them. There's Penal Code Section 1536. There's Penal Code Section 1540. There's a writ of mandate under Code of Civil Procedure 1085. There's state tort claims. But those would not address the issue of grieving parents who want their child's clothes back being held hostage in a lawsuit. So those remedies don't address the situation where the attorney for the city says I'll give you your son's possessions back if you drop your lawsuit. You don't think that's grossly offensive? Certainly not, Your Honor, because they were not being held hostage. There's no allegations that there was ever interference with the proper return the proper pursuit of channels to get the property back under state law. It was never that I'm not going to give you this property back, or I'm sorry, it was never I was not going to allow your motion to be granted, or I'm going to interfere with your pursuit of your proper post-deprivation state court remedies. There's no allegations like that. The only allegation is that in consideration it was an idea, the way it's presented in the record, that perhaps we would get the property if you dropped the claim, but it was no way that interfering with their adequate post-deprivation state law remedies, and under Perkins, there cannot be a constitutional violation under the procedural due process clause. Excuse me. Am I misreading your position here by saying that it sounds as if you're saying they're eventually going to get the property back and that the intervening offer by Miller somehow should be brushed aside? It does not arise to the level of constitutional deprivation. The only claim against Defendant Miller was the procedural due process claim. It cannot arise to a violation of due process rights under Perkins, and again, they dropped the substantive due process claim. It did not ask the district court... Counsel, if Judge Gould, if I could just ask you to clarify or address a concern I have. I'm not sure if it's a concern, but if they were contending that it was outrageous conduct, even if they didn't use the label substantive due process, why isn't that not a waiver if they state the substance of the claim even without calling it substantive due process? Because really it's kind of up to the courts, it's up to us to look at it and say what the law says, what the statute says, what the statute says. Why is that? Yes, sir. I believe their pleadings, the amended pleadings, focused on due process, and I would have to go back and check, but I don't believe that they were alleging egregious, either focusing on the due process is my recollection. But under Alaska versus United States and Benson versus J.P. Morgan, 673 F3 1207, if a party fails to ask the district court for a waiver, or leave to amend, to add a certain claim, it cannot then argue that the district court erred in sua sponte, failing to allow them to pursue such a claim. Under those Ninth Circuit cases, I believe the claim would be waived. But again, I certainly don't think, and I haven't seen any cases cited by the plaintiff to show that the allegations in this case shock the conscious, and furthermore, since there are no case law about that, I would submit there would be qualified immunity in this case. It's the plaintiff's burden to come up with a clearly established law showing that these confidential settlement proceeding negotiations arise to the level of a 14th amendment substantive due process claim, and I certainly don't think that that burden has been met in this case, and he would be entitled to qualified immunity from the claims in this case. All right, counsel, you've well exceeded your time. We helped you, but your time is up. We'll hear from your co-counsel. Thank you. Good morning, Your Honors. Blythe Bock on behalf of the City of Los Angeles. The counsel for Mr. Miller has been focusing on the alleged substantive violation. I would just like to address on behalf of the City the Monell issue. I'd like to emphasize to the panel that under Monell, the whole point of Monell, actually, is that to hold a City, any kind of a public interest in the City of Los Angeles liable for a constitutional violation, the threshold showing needs to be that in some way it was that City acting. And the way we do that is by showing it was a policy or practice or a final policymaker. And I think here the record is abundantly clear that neither one of the actors here were a policymaker. As far as Mr. Miller, I will defer to his attorney, and she has adequately shown that he was essentially just an attorney handling the case. For the City, the plaintiffs, the appellants seem to be focusing on Mr. Call. Mr. Call was not even management within the City. He was merely a detective. He was, his day-to-day activities involved the taking of property, the retention of property during an investigation. The fact that he handled the particular property at issue here in no way makes him a policymaker for that issue. So in that, under Monell and a host of cases, there's absolutely no authority to hold the City liable for anything that Mr. Call would have done. Now, I would ask... Who would have been the decisionmaker for the decision as to how property of a deceased person is treated once an investigation is completed? Who in the City would be responsible for making the policy determination of how those proceedings are handled? How those proceedings were to go? Well, I think it would depend on each case. I know... In this case... In this case, I mean, it would be, I would have to research it, but I can say that potentially it would be the legislative body, the City, well, the chief of police at minimum. Is there a policy within the City that addresses how the effects of deceased individuals are disposed of following an investigation? Absolutely. And who promulgated that policy? It is the police department, and it's the LAPD manual, and within that manual are the specific provisions, and I can give you the record citations. The manual, my understanding of the manual's promulgation is that there are departments within the LAPD that work on it, and it is reviewed. And I would say, in all likelihood, the chief of police is likely the final reviewer of those policies. And in doing that, wouldn't he rely upon the advice and recommendations of a detective like Detective Kahn? Not on a specific case like this. The whole point of Monell is whether or not it's the policy, whether or not it's the overarching way the City is governing itself. I understand, but in applying the policy, how is it done? It is done pursuant to the LAPD manual, and the portions that are in the record show that the LAPD is very careful. In fact, it wants to return the property to the individuals that own it. I think Detective Cole testified in deposition, if we didn't return it, the walls would come falling down. They want to return it. Was the manual followed in this case? Well, it was in the sense that there was not, there's no evidence here that there ever actually was a request of the LAPD for this property. That's what's so strange here. We have the e-mails between the attorneys, but what we don't have is any actual request to the LAPD. Is that typically what happens? Does it typically happen that the request is made, if a request is made to the detective, is that considered a request to the LAPD? Well, theoretically, if you mean if the parents were to... Or the attorney for the parents were to make a request to the detective, whoever from the police department the family is dealing with, would that be a request to the department? I would say, likelihood. Okay. So is it your representation that the attorneys for the family in this case never made a request to any representative of the police department for return of the deceased effects? Yeah. Even the plaintiffs, the appellants in their interrogatories say that, that they asked their attorneys, but they never went to the LAPD. But did the attorney ask the LAPD? If they asked their attorneys, and their attorneys asked the LAPD, would that be a request to the family? If they asked the LAPD, that would be consistent with the policy. Correct? Well, that's an issue for Mr. Miller. My understanding is... But I'm just asking you the question. If the parents asked their attorney, and the attorney asked the detective, would not that be a request to the LAPD? Theoretically, yeah. Okay. Did that happen in this case? You know, the record is unclear. As I say, there's this back-and-forth between Mr. Miller and the attorney, in which Mr. Miller actually starts off citing the statute that the parents' attorneys needed to proceed under to get the property. Well, let's assume... And it's actually offered up. In fact, the initial offer is from Mr. Miller. There's not even a... The genesis of it does not appear to be, at least from the record, from the parents. Well, let's assume, if we assumed that the request was made through the attorney for the parents to the detective for the LAPD, would that then trigger the policy of the LAPD in terms of how to handle the request at that point? Yeah, theoretically. But remember also that my understanding is that when this was requested, there was the pending investigation. Now, it's true that the investigation concluded, but at the time that this was all proceeding, there was both the criminal investigation and the administrative investigation. Right. So once the investigation was over, though, would the manual justify holding the property after that point, if there were a request that was made earlier, when the effects were not available for release?  Would a new request have to be made under the policy in order for the effects to be returned? I'm honestly not sure. I would have to look at the provisions of the policy. I can tell you that Detective Call said in his deposition that one of the reasons why holds are put on property is just simply so it's not destroyed, because I guess if you have this property and it's sitting there for a long time, it will get destroyed. And so holds will actually preserve the property. I understand that. But what would happen to a pending request for the property to be returned? Would that be noted in accordance with the policy so that when the need for the items is no longer there, that it could be released? Do you know whether the policy provides that or no? Well, presumably here, well, presumably it does, because here, in fact, the property was returned to the parents. It was a matter of, I think ultimately it was November 2010. So how long, when did the need for the effects terminate? When were all investigations concluded so that there was no further need for the evidence? It was a year, let me look in the record. It is in the record. It was a year after the shooting. Here, it's in my brief. I will give you the citation. It was a year after, because that's under the city charter, that's how long we have. What date would that have been? I'm trying to look that up for you. It is in my brief. I believe it was February, my memory is that it was February 9th, 2010. Let's see. The administrative investigation ended in January 2009, and that is our, Mr. Miller's supplemental record at 264. So January 2009, and when were the effects returned, November 2010? November 2010, and that's the appellant's record at 169 and 179. So is that consistent with the policy to hold the effects for almost two years after the investigation ends? Well, I don't think that the policy puts a specific time limit on it. It just says that the LAPD makes a specific time limit on it. And it makes its efforts to return the property to the parents. Remember that this wrongful death lawsuit was not even filed until I believe it was February 2009. So what does that have to do with the policy of the LAPD? Because that was the first notification we had of any survivors even being in existence. All right. Thank you, counsel. So that was the earliest it could have even begun. Thank you. Thank you, Your Honors. Counsel, may I ask you a question related to opposing counsel's last statement that it was justified to hold the property for almost two years, because that was the first inkling that the department had regarding survivors? I, that's absolutely unjustified. And actually, the first inkling that the department had regarding survivors, by my record, is February of 2008, when Mr. Boone first requested the return of the property. The shooting lawsuit was filed February 2, 2009. And certainly, when the shooting lawsuit was filed, the plaintiffs filed declarations indicating that they were the survivors next of kin that had the authority to file the suit and represent the estate. So certainly at that point, the city knew exactly who the survivors were, where to find them, how to contact them, who their representatives were. Beyond that, what the city appears to be trying to do is separate the LAPD, the city, and the chief of police. And Mr. Miller. But they can't do that. And the reason is, is because when the plaintiff's attorney requested of Mr. Miller that the clothing be returned, Mr. Miller was the representative of the city. He was also the representative of the chief of the LAPD. And so the request going to Mr. Miller, and there's a, in actually opposing counsel's excerpts of record, a number of communications from Mr. Duren, who was plaintiff's counsel, to Mr. Miller about the return of the clothing, January, I'm sorry, April 23, 2010, May 8, 2010, May 11, 2010, August 12, 2010. And all along, while Mr. Miller, the representative of the city and the LAPD, is saying I can't give you these clothes, Mr. Call, who by the way testified at his deposition, that he has the authority, and his exact words were, and yes, it could be done, it just takes the stroke of a pen by me, in order to release the property. But do you think that he was acting in accordance with city policy? Was he implementing city policy when he made that statement? Which he? The detective. The detective. Do you think he was acting in accordance with the authority from the city policy regarding the return of property? Yes, he absolutely was. When he held it, the LAPD policy and the city policy made him the person who has the authority to either hold it or not hold it. But he held it on the advice and after the counsel of Mr. Miller, who at the time was the representative of the city, and was ostensibly against the return of the property. He was ostensibly carrying out the instructions of his client. So we would submit that as far as Monell liability goes, this would be more akin to a Pembauer case. On the issue of how to conduct the policy regarding the representation of the city in this lawsuit, Mr. Miller was the decision maker. Let me ask you this, in terms of qualified immunity, what's your response to opposing counsel's observation that it's not clearly established that when there is a, a state remedy for post-deprivation proceeding on the property that it can't be clearly established that it's outrageous to keep the property? What's your response to that? My response to that is Cooper v. Dupnick. It's a Ninth Circuit case, 963 F. 2nd, 1220 at 1250. And what Cooper v. Dupnick says is that a substantive due process violation is found where government conduct exists where officials, and here's the quote, act deliberately to flout the Constitution or engage in a premeditated elimination of plaintiff's substantive rights. And here, when we're talking about the every three to six-month counsel that Mr. Miller gives Mr. Call to systematically eliminate plaintiff's possessions of their deceased son, that was from 1992. It's pretty clear that you cannot do that. Well, why do you think that counsel for the parents did not just go to the state proceedings and compel the return of the property? Because, and I would disagree with my colleague on the other side as to what Peratt and the city of West Covina hold as far as the adequacy of the state law in terms of the removal of plaintiff's possessions and the writ of mandamus. However, as far as a state court tort action, the only way to address the issue of the continued and ongoing deprivation and the damages suffered by the plaintiffs in this case would be a state court tort action. But how about just simply the return of the property? Wasn't there an available state avenue to just get the release of the property from the police department? We would contend no. But, in all honesty, I think that the city of West Covina may disagree with us on that point. So why would you contend no? Why would you contend no if there is a state law statute or remedy that's established in court? Fair question. The reason is, is because where this case differs from all the other cases is that Mr. Duren actually did not go to the state court. Mr. Duren actually did draft a complaint under the state law penal code sections, and he took that complaint to court, and he tried to file it, which differs a bit from the city of West Covina and Peratt, where someone just went to court, found that there wasn't a case number, and then left. Mr. Duren actually drafted it, went to court, tried to file it, communicated back and forth with the city attorney to try to figure out how to get it done, and just couldn't get it done. Did the clerk of the court decline to file the complaint? Yes. The clerk of the court refused it, because there's no case number. And the distinction here between the city of West Covina is that a warrant was issued in that case, and so when the police are holding property on behalf of the court, as they do with a warrant, the tie to the property is the warrant number. So even if there is no case, still you can still file a complaint. So the police shooting didn't generate any kind of criminal action or any kind of proceeding that would be cognizable for the purpose of starting the proceeding for the return of the property? That's correct. Any other questions by the panel? Could you wrap up, counsel, then? Yes, I would just offer that with regard to Judge Gould's earlier question about Matthews. Matthews addresses the proposition that someone who is subject to a deprivation of property is entitled to a meaningful hearing at a meaningful time, and would not be held indefinitely by the government until you figure out how to go and get it back from them. But in actuality, the government, when it seizes your property, can't hold it in perpetuity. At some point they've got to engage in processes to get it back to you. And it just wasn't done here. All right. Thank you, counsel. Thank you to both counsel for your argument in this interesting case. The case just argued is Coulter v. Colvin. By the way, before counsel leaves, did you all explore mediation in this case? We have not yet. Would the parties be amenable to mediating this case? Always, absolutely. How about counsel for the city? Would you be amenable to mediation for this case? Well, what we might do, and I'm just speaking as myself. I have not consulted with my colleagues. What we might do is enter in order asking the parties to consider mediation. If you decide not to, the mediation will not occur. If you consider it's not possible, if you agree to do so, mediation will occur. And if you're not able to reach a result, then we'll resolve the case. Thank you, counsel.
judges: Lemelle, Gould, Rawlinson